**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK TERECH, individually and<br>for classes of similarly situated people, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11CV4076 |
| | ) | |
| FIRST RESOLUTION MANAGEMENT | ) | Judge Leinenweber |
| CORPORATION, FIRST RESOLUTION | ) | |
| INVESTMENT CORPORATION, and | ) | |
| LAW OFFICE OF KEITH S. SHINDLER, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
Thomas E. Soule
EDELMAN COMBS LATTURNER & GOODWIN LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

Defendants have filed two motions to dismiss – one by First Resolution Management Corporation and First Resolution Investment Corporation (Docket Nos. 52 & 54), and the other by Law Office of Keith S. Shindler Ltd. (Docket Nos. 55 & 57). Both motions should be denied.

Defendants claim that they can buy what the seller represents to be a $2,475.87 debt, and then file a suit claiming that, as of the purchase date, a substantially *larger* sum was owed. Plaintiff's attack against this absurd proposition, under basic contract law and consumer protection statutes designed to prevent unfair debt collection practices, is well-founded.

## I.  BACKGROUND

First Resolution Investment Corporation ("FR Investment") sued Mark Terech, through the Law Office of Keith S. Shindler Ltd. ("Shindler"), in an attempt to collect on an alleged consumer credit card debt originated by U.S. Bank NA, ND ("U.S. Bank"). (Docket No. 51, ¶¶33-34, 36 and Exhibits A-D;[1] Case No. 09 M1 120910 (Cook Co. Cir. Ct.).) The suit was filed at the direction of First Resolution Management Corporation ("FR Management"), which manages all debts allegedly owned by FR Investment and is responsible for initiating suits. (*Id.*, ¶¶14-16, 18, 35.) Mr. Terech appeared in the case, and defended against the suit. (See Exhibit E.) The suit against Mr. Terech was voluntarily dismissed in April 2011. (Docket No. 51, ¶53.)

In its suit against Mr. Terech, FR Investment claimed that the amount of the alleged debt was **$4,035.80**; it sought judgment in the amount of $4,385.80 (including a claimed $350.00 attorney's fee), plus court costs. (Exhibit A.) FR Investment further claimed that

(A)     the credit card debt was "charged-off" on August 31, 2004 by the original creditor, U.S. Bank;

(B)     the amount of the alleged debt, at the time of charge-off, was **$2,475.87**;

(C)     the alleged debt was sold by U.S. Bank to Unifund CCR Partners ("Unifund") on January 25, 2005; and

(D)     the alleged debt was, in turn, sold by Unifund to FR Investment on July 25, 2007.

---

[1] The same exhibits are attached, for this Court's reference, as Exhibits A-D.

[Exhibits B-D.]

The difference between the charge-off amount, and the amount claimed, was $1,559.93. This purports to be interest on the debt, and includes interest that supposedly accrued between the date of the charge off and July 25, 2007 – the date Unifund sold the alleged debt to FR Investment. However, neither U.S. Bank nor Unifund charged such interest while they owned the debt. (Docket No. 51, ¶¶42-50.)

Under federal banking regulations, a credit card debt must be charged-off when it is 180 days overdue. (*Id.*, ¶25 (citing 65 Fed.Reg. 36903 (June 12, 2000)).) "Charge-off" means that the debt can no longer be carried at face value as an asset on the bank's books, in order to avoid misleading bank examiners into thinking that the bank is more stable than it is. Importantly, a "charge-off" does not affect the bank's right to collect the debt.

Upon charge-off, banks ordinarily would not charge further interest, for a number of prudential business reasons. (*Id.*, ¶¶26-29, 41.) These include the following:

(A) By not charging interest, banks reduce the amount of bad debt on their books; the amount of bad debt banks carry is a subject of interest to bank examiners. *DSC Risk Management Manual of Examination Policies*, Federal Deposit Insurance Corporation (2004) (excerpts attached as Exhibit F). A bank must maintain a reserve calculated on the amount of bad debt on its books.

(B) Declining to charge interest also allows banks to avoid the expense of sending out required monthly statements to debtors who were unlikely to repay debts. See 12 C.F.R. §226.5(b)(2) (2009) and 26 C.F.R. §1.6050P-1 (showing that, before February 12, 2010, statements required unless bank deemed account uncollectible); and 12 C.F.R. §226.5(b)(2) (showing that, after February 12, 2010, requirement to send statements when interest or fees added was made explicit).

Mr. Terech alleges that U.S. Bank did not add interest to the amount of his debt after the charge-off date, in line with prudential business decisions. (*Id.* ¶¶44.) Mr. Terech specifically alleged that the price which both Unifund and FR Investment paid for his alleged debt was a

2

small percentage of the face-value of the debt – which had not changed since it was charged off in 2004.  (*Id.*, ¶¶42, 43, 45, 46, 50.)

Despite this, FR Investment sought payment of the charged-off amount, plus $1,559.93 in interest calculated at a rate of 15.65% from the date of the charge-off – which was three years prior to FR Investment's purchase of the debt – even though U.S. Bank had not added interest after charge-off.  (*Id.*; see <u>Exhibit B</u>.)  Mr. Terech further claimed that, while original creditors report the charge-off amount (without any additional interest) to credit reporting agencies, FR Investment incorrectly reports that amount plus the added, post-charge off interest that creditors did not impose. In both cases, the reporting is made to anyone who may see and use credit reports, including the consumer and other creditors.  (*Id.*, ¶32.)

Plaintiff claims that defendants were not entitled to charge, or seek, any interest that was not charged by the original creditor on the debt at the time, prior to sale of the account after charge-off.  (*Id.*, ¶49.)  He therefore claims, for himself and others similarly situated, that

(A)     all defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") by using false, deceptive and unfair means in an attempt to collect a debt, contrary to 15 U.S.C. §§1692e and 1692f (*id.*, ¶¶54-67); and

(B)     FR Investment and FR Management violated the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.* ("ICAA"), by seeking a remedy to which they were not entitled including, specifically, seeking to impose fees and charges that they could not collect, contrary to 225 ILCS 425/9 (*id.*, ¶¶68-80).

Plaintiff seeks the award of appropriate damages on these claims.  In addition, he also seeks a declaration that the pursuit of interest that had not been added by a prior owner of the debt is illegal, and an injunction of seeking payment of such interest or reporting to credit bureaus that such interest is owed; this relief is also sought for a class.  (*Id.*, ¶¶81-91.)

Finally, plaintiff seeks (for himself) relief from FR Investment and FR Management, for the pursuit of a time-barred claim.  The complaint was filed and served more than five years after charge-off; thus, 735 ILCS 5/13-205 bars the claim.  (*Id.*, ¶¶33, 38, 52, 92-96.)

3

## II.     STANDARD OF REVIEW

When reviewing a complaint, a court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010).  A motion to dismiss under Fed.R.Civ.P. 12(b)(6) only tests the "sufficiency" of a complaint, and not whether the facts alleged in it will be ultimately proven true.  *Id.*

In the course of analyzing Fed.R.Civ.P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Swanson v. Citibank NA*, 614 F.3d 400, 404 (7th Cir. 2010) held that the "plausibility" standard set by the Supreme Court requires only that a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." [Emphasis in original.]

## III.     AN ASSIGNEE STEPS INTO THE SHOES OF THE ASSIGNOR AS OF THE TIME OF THE ASSIGNMENT, AND ACQUIRES ONLY THOSE RIGHTS THAT THE ASSIGNOR HAD AND DID NOT WAIVE

Defendants' motions should be denied because an assignee only acquires those rights that the assignor had, and has not waived, as of the date of the assignment.  Under *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 762-763 (7th Cir. 2007),

> an assignment transfers "to the assignee all the right, title or interest of the assignor in the thing assigned." *A.J. Maggio Co. v. Willis*, [316 Ill.App.3d 1043, 1047; 738 N.E.2d 592, 596 (1st Dist. 2000)]... Further, an assignment divests the assignor of all rights in the property assigned and places the assignee in the shoes of the assignor with respect to the property. See *People v. Wurster*, [97 Ill.App.3d 104, 106; 422 N.E.2d 650, 652 (3d Dist. 1981)].

Critically, the rights an assignee receives are those which the assignor has at the time of assignment.  *Illini Bank v. Clark*, 436 B.R. 81, 90 (Bankr. C.D.Ill. 2010), relied upon *Stavros v. Karkomi*, 39 Ill.App.3d 113, 123; 349 N.E.2d 599, 607 (1st Dist. 1976); *Stavros* held that

> it is well settled in Illinois that when a valid assignment is effected, the assignee (1) acquires all of the interest of the assignor in the property that is transferred and (2) stands in the shoes of the assignor. [*E.g.*, *Buck v. Illinois Nat'l Bank & Trust Co.*, 79 Ill.App.2d 101, 106; 223 N.E.2d 167, 169 (2d Dist. 1967).]  Moreover, the assignee of a contract for the purchase of real estate acquires no greater rights in the property than were possessed by his assignor, the original contract vendee [*Miller v. Pettengill*, 392 Ill. 117, 122; 63

4

N.E.2d 735, 738 (1945)] and ***takes the assignor's interest subject to all legal and equitable defenses existing at the time of assignment*** [*Rose v. Dolejs*, 1 Ill. 2d 280, 290; 116 N.E.2d 402, 409 (1953)]. [Emphasis added.]

See *John O. Schofield v. Nikkel*, 314 Ill.App.3d 771, 783; 731 N.E.2d 915, 925 (5th Dist. 2000) (quoting *Stavros*). Likewise, *A.J. Maggio*, *supra*, 316 Ill.App.3d at 1047, held that "the assignee can obtain no greater right or interest than that possessed by the assignor, inasmuch as one cannot convey that which he does not have." (Citation omitted.) See also *Olson v. Etheridge*, 177 Ill.2d 396, 406-407; 686 N.E.2d 563, 567-568 (1997) and *Apollo Real Estate Inv. Fund IV LP v. Gelber*, 398 Ill.App.3d 773, 779; 935 N.E.2d 949, 955 (1st Dist. 2009).

These basic common law principles are widely accepted. *Collection Center Inc. v. Bydal*, 795 N.W.2d 667, 672 (N.D. 2011) ("the assignee of a cause of action takes subject to any defenses in existence at the time of assignment or before notice of the assignment"); *Renaissance Leasing LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 128 (Mo. 2010) ("the only rights or interests an assignee acquires are those the assignor had at the time the assignment was made"); *International Ribbon Mills Inc. v. Arjan Ribbons Inc.*, 325 N.E.2d 137, 139 (N.Y. 1975) (similar); *First Nat'l Bank of Lovelock v. Rogers*, 258 P. 1024, 1026 (Nev. 1927)[2] ("it is a general rule that an assignee cannot maintain an action upon an assigned chose in action where his assignor did not have such right"); *Babson v. Ulysses*, 52 N.W.2d 320, 324 (Neb. 1952) (citing *Rogers*); *State Secs. Co. v. Daringer*, 293 N.W.2d 102, 105 (Neb. 1980) (citing *Babson*); *Association of Commonwealth Claimants v. Moylan*, 71 F.3d 1398, 1402 (8th Cir. 1995) (citing *Daringer*).

An issue similar to that raised here is presented when a creditor waives its right to charge compound interest or a higher default rate, and then sells the debt. Last month, in *In re 400 Walnut Assocs. LP*, 2011 Bankr. LEXIS 4092, *11 (Bankr. E.D.Pa. Oct. 20, 2011),[3] a lender "did not compound interest while it held the note." The assignee of that note, which attempted to "[compound] interest for the time period *prior* to when it owned the loan and simply added that to

---

[2] FR Investment is based in Nevada. (Docket No. 51, ¶7.)

[3] Unreported cases are attached as <u>Exhibit H</u>.

its claim" (*id*. at \*9 (emphasis in original)), was told that it could not, because an assignee

> stands in the shoes of the assignor... and so its rights rise no higher than [the assignor's]. See *In re Nixon*, 400 B.R. 27, 35 (Bankr.E.D.Pa. 2008) (disallowing creditor's claim to default rate interest for period when prior holder did not charge default rate), citing *Crawford Cent. Sch. Dist. v. Commonwealth*, [888 A.2d 616, 619-620 (Pa. 2005)]. **_Because [the assignor] waived its right to compound unpaid interest for the time it held the loan, [the assignee] has no right to reverse that decision._** See [*Beal Bank v. Crystal Props. Ltd. LP*, 268 F.3d 743, 747 (9th Cir. 2001)] (finding it inequitable to allow present holder to recalculate interest for period when predecessor did not and considering the right to have been waived); *In re Harvest Oaks Drive Assocs., LLC*, [2011 Bankr. LEXIS 146 (Bankr.E.D.N.C. Jan. 14, 2011), \*23-\*34] (following *Crystal Properties* in disallowing retroactive imposition of charges not claimed by prior holder); and *In re Sweet*, 369 B.R. 644, 652 (Bankr.D.Colo. 2007) (disallowing assignee from retroactively charging default rate interest when prior holder had not). As previously noted, [the assignee] can point to no decision which expressly upholds this practice, which practice the Court finds to be avaricious and highly improper. [The assignee's] defense of its position consists only of attempts to distinguish precedents which have rejected it. The Court finds these efforts wholly unpersuasive. [*Id*. at \*11-\*12 (emphasis added).]

*Beal Bank*, which was cited by *In re 400 Walnut*, held that a creditor cannot "recover the default interest rate in a period during which it was not actively enforced by [its] predecessors in interest," which represented a "[waiver of] their right to default interest for the periods in which they were holders of the notes." *Beal Bank*, 268 F.3d at 747.  Furthermore, "both state and federal courts have made clear the unquestionable principle that, even when the terms of a note do not require notice or demand as a prerequisite to accelerating a note, the holder must take affirmative action to notify the debtor that it intends to accelerate.... before acceleration and, in turn, before the default interest rate becomes effective." *Id.* at 749-750.

*Padilla v. Ghuman*, 183 P.3d 653 (Colo. Ct. App. 2007), held that an original creditor had the ability to charge a higher rate of interest after the consumer defaulted, but did not do so at any time from when the option became available to when the debt was assigned.  *Id*. at 659-660.  That collector could not charge interest at the default rate, without first notifying the debtor; the court held that "to hold otherwise would produce the unfair and unjust result of allowing a creditor to cause a debtor to believe it was not exercising a discretionary right... to implement a default interest rate and then to retroactively exercise the option to implement the default rate, thus holding the debtor liable for interest he... reasonably believed was not being charged." *Id*. at 660.

Finally, in *American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 452 (6th Cir.

6

1942), the court noted that "any person acquiring by assignment or license an interest in such invention or authorship takes title subject to prior assignments or licenses *of which the assignee must inform himself as best he can and at his own risk.*"  (Emphasis added.)  See *In re Singer Co.*, 262 B.R. 257, 265 (Bankr. S.D.N.Y. 2001) (similar, citing *American Dirigold*).

Thus, FR Investment cannot buy a $2,475.87 debt, and claim that the amount owed at the time of purchase was $4,035.80, or any sum other than $2,475.87.  U.S. Bank waived the right to collect anything more than $2,475.87 when it did not assess interest, and sold the debt as an obligation to pay $2,475.87.  Defendants are not entitled to claim the debt was for a sum larger than that.  That is what they did here.  While defendants could *prospectively* resume the addition of interest after proper notice to the consumer, no such notice was given.  Defendants' interest charges, therefore, violated the FDCPA and ICAA.

## IV.    U.S. BANK'S CESSATION OF INTEREST, AS OF THE DATE THE ALLEGED DEBT WAS CHARGED-OFF, BINDS DEFENDANTS

Plaintiff alleges that, "between the date the account was charged off [on August 31, 2004] and the date U.S. Bank sold the debt to Unifund [on January 25, 2005], U.S. Bank waived all interest and finance charges on the account."  (Docket No. 51, ¶44.)  Thus, as that allegation must be accepted as true (*Fednav, supra*), if U.S. Bank sold a $2,475.87 debt to Unifund, then Unifund purchased a $2,475.87 debt – and not a debt of a larger amount – pursuant to *Rawoof, A.J. Maggio, Illini Bank, In re 400 Walnut* and all of the other authorities cited above.  Neither Unifund nor FR Investment (who purchased the alleged debt from Unifund in 2007) could charge interest on the debt for periods prior to their ownership, as a result of that waiver.  Defendants' pursuit of interest which it had no right to collect was illegal under the FDCPA and the ICAA.

Under *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 104-105; 585 N.E.2d 46, 49 (1991),

Waiver is defined as the intentional relinquishment of a known right. Waiver may be made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived a right....

...Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver.  An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent

7

with any other intention than to waive it. Whether [some entity has] waived its acceleration rights is a question of fact.... [Citations and quotation marks omitted.]

*Accord*, *Delta Consulting Group Inc. v. R. Randle Const. Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). A Rule 12(b)(6) motion tests only the sufficiency of a complaint. *Brezina v. Dowdall*, 472 F.Supp. 82, 85 (N.D.Ill. 1979) (whether "waiver of any property right" was made by a public housing tenant was "a question of fact [that] cannot be decided on a motion to dismiss").

Contrary to defendants' claims, the allegation that U.S. Bank waived interest is supported by other factual allegations, and is not conclusory. (Docket No. 54 at 1, 3, 6; Docket No. 57 at 5, 7, 8.) Plaintiff alleges that the face value of the debt at the time U.S. Bank sold it to Unifund, and also at the time Unifund sold it to FR Investment, was the same as the amount of the debt when it was charged-off by U.S. Bank; if proven, this would demonstrate a waiver of any post-chargeoff interest that U.S. Bank may have been entitled to. (Docket No. 51, ¶¶43, 46, 50.) Plaintiff also claims that U.S. Bank had a very specific reason for waiving its right to collect interest – namely, that it was actually in its business interest to do so. (See Docket No. 51, ¶¶24-29.)

To claim additional interest – that it would likely never collect – U.S. Bank would have to increase the amount of bad debt it reported to bank examiners. Banks regulated by the FDIC (including U.S. Bank) must maintain an "allowance for loan and lease losses" (or "ALLL") in order to guard against the effect of defaults. A large amount of bad debt negatively affects a bank's health, and increases the possibility of regulatory action. (Exhibit F (excerpts of *DSC Risk Management Manual of Examination Policies*), §3.2 at 3-4. See *id.*, §1-1 at 4-5 (effect of insufficient ALLL amount on overall evaluation of banks' asset quality).) The right to collect interest was not, thus, "[given] up in exchange for nothing," as defendants suggest. (Docket No. 54 at 6 (quoting *Cole Taylor Bank v. Truck Ins. Exchange*, 51 F.3d 736, 739 (7th Cir. 1995)). U.S. Bank gave up the interest to avoid increasing the amount of bad debt on its books.

Defendants' attack on these allegations, through *Van Slyke v. Capital One Bank*, 2007 U.S. Dist. LEXIS 64015, *17-*19 (N.D. Cal. 2007) and *Murray v. Citibank (SD) NA*, 2004 U.S. Dist. LEXIS 20941, *7 (N.D.Ill. 2004), is nonsensical. (Docket No. 54 at 7.) Critically, Mr.

8

Terech alleges that as a matter of fact the original creditor did not add interest after charge-off. Attacking the validity of its motives does not suggest that the decision was not made.

The two cases cited by defendants are simply wrong. Prior to the 2010 amendment to 12 C.F.R. §226.5(b), the duty to send billing statements was relieved when "the creditor deems it uncollectible." 12 C.F.R. §226.5(b)(2) (2009). The most logical meaning of "uncollectible" in the context of a creditor's dealings with a receivable is that given in IRS regulations, which describe a "decision by the creditor.... to **discontinue collection activity and discharge debt**" as a reportable event that may result in income to the debtor from discharge of indebtedness. 26 C.F.R. §§1.6050P-1(b)(2)(i)(G). (Emphasis added.) That definition has been in place since January 4, 1996. 61 Fed.Reg. 262, 268 (Jan. 4, 1996).

The decisions cited by defendants assumed, without reasoning, that "uncollectible" meant "charge-off" even though banks or assignees often would try to collect charged-off debt. The Federal Reserve Board ("FRB") responded by amending its regulations to make clear that a debt is uncollectible "**when a creditor has ceased collection efforts, either directly or through a third party.**" 74 Fed.Reg. 5244, 5276 (Jan. 29, 2009) (emphasis added). This is the IRS definition. The FRB found this conclusion to be dictated by the regulation's plain meaning:

> creditors are not required to send periodic statements on accounts the creditor has deemed "uncollectible," which is not specifically defined. In the June 2007 Proposal, the Board sought comment on whether guidance on the term "uncollectible" would be helpful. . . .
>
> Based on the plain language of the term "uncollectible" and the importance of periodic statements to show consumers when interest accrues or fees are assessed on the account, the Board is adopting new comment 5(b)(2)(i)-3.... **The comment clarifies that an account is "uncollectible" when a creditor has ceased collection efforts, either directly or through a third party.** [*Id*. (emphasis added).][4]

In its final 2010 regulations, the FRB also provided, for the first time, that banks could cease sending statements upon chargeoff if, and only if, no interest or fees were added thereafter.

---

[4] The "comments" referred to are found in 12 C.F.R. part 226 Supp. I, and are numbered to correspond with the provisions of Regulation Z to which they pertain. The commentary expands upon Regulation Z. For many years, the commentary has been issued pursuant to the notice-and-comment rulemaking procedures of the Federal Administrative Procedure Act, and both Regulation Z and the commentary have the force and effect of law.

9

The FRB's interpretation of its pre-2010 regulations has the force and effect of law unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-567 (1980). The FRB's interpretation of "uncollectible" is clearly rational, since a creditor that is adding interest on a debt and then sells it to a debt buyer plainly does not consider it to be "uncollectible" in any sense of the word. If a bank deems an account to be uncollectible, it would naturally also conclude that the addition of further interest would be pointless – if the amount already due would not be collected, additional interest would not be collected.

Whether the original creditor did not add interest because it recognized the legal problem that was addressed by the FRB or because it did not want to increase the amount of bad debt on its books, the fact is that it did not add interest after charge-off.[5] That is what constitutes waiver.

## V.  FALSELY STATING THE AMOUNT OWED ON A DEBT IS ACTIONABLE

Given the well-pled allegations in the amended complaint, plaintiff has stated a claim that U.S. Bank knew that it had the right to charge interest but, for its own reasons and to its own advantage, chose not to do so. Such an act cannot be seen as accidental; after all, banks are in the business of charging, and collecting, interest. Plaintiff has sufficiently alleged that

    (A)    U.S. Bank intentionally waived its right to collect interest after charge-off,

    (B)    FR Investment (through Unifund) took subject to that waiver,

    (C)    no defendant was entitled to claim interest for periods when the then-owner did not charge interest, and

    (D)    by doing so anyway, defendants violated the FDCPA and ICAA.

Accordingly, the motions to dismiss should be denied, notwithstanding defendants' arguments.

In *FDIC ex rel Ravenswood Bank v. Republic Title Co.*, 2011 U.S. Dist. LEXIS 42622,

---

[5]  Defendants' use of *Olvera v. Blitt & Gaines PC*, 431 F.3d 285, 288 (7th Cir. 2005), is unavailing. (Docket No. 54 at 2, 7, 8; Docket No. 57 at 7, 8.)  *Olvera* says nothing about what happens when an assignor's rights are waived prior to an assignment. *Vickey v. Asset Acceptance LLC*, 2004 U.S. Dist. LEXIS 12426 (N.D.Ill. July 1, 2004), also does not discuss waiver. Further, *Neff v. Capital Acquisition & Management Co.*, 352 F.3d 1118, 1120-1121 (7th Cir. 2003) is also inapplicable, contrary to defendants' citation to it. (Docket No. 54 at 2.) *Neff* held that debt collectors are not obligated to provide monthly statements; the issue here is whether the original creditor did.

*10 (N.D.Ill. Apr. 20, 2011), the court considered whether allegations of "the mere passage of a time shorter than the statute of limitations before filing the lawsuit [evidence] waiver of a claimed breach of contract." The allegations relating to waiver in this case are much more robust; defendants' attempt to use *Ravenswood Bank* here falls short. (Docket No. 54 at 6.)

Defendants' claim that they cannot be sued under FDCPA or the ICAA, for charging more interest than was charged by the original creditor, is unsupported by any case law. (Docket No. 54 at 4-5; Docket No. 57 at 5-6.) The FDCPA and ICAA expressly permit claims on the grounds that the amount sought by a debt collector exceeds that which he is permitted to collect under applicable contracts and law, as plaintiff claims here. Under 15 U.S.C. §1692e(2)(A), a debt collector cannot make a "false representation of... the character, amount, or legal status of any debt." See 15 U.S.C. §§1692e, 1692e(5) and 1692e(10) (similar). Further, 15 U.S.C. §1692f(1) prohibits attempts to "[collect] any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The ICAA permits claims based on a false representation of the amount of the debt, including specifically a false statement of the amount of interest. 225 ILCS 425/9(20), 425/9(26), 425/9(27), and 425/9(29).

Obviously, the character, amount and legal status of a debt depends on state contract law – including law regarding when a waiver occurs, what interest can be permissibly charged, and so on. *Weathers v. Gem City Account Serv. Inc.*, 2010 U.S. Dist. LEXIS 82783, *10-*11 (C.D.Ill. Aug. 13, 2010) ("contract law or other state or federal law will always govern the legal status of a debt"). Many decisions hold that charging unauthorized interest is a FDCPA violation. *Pollice v. National Tax Funding LP*, 225 F.3d 379, 408 (3d Cir. 2000) (collector "presumably... violated [15 U.S.C. §1692f(1)] regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims"); *Acik v. IC Systems Inc.*, 640 F.Supp.2d 1019 (N.D.Ill. 2009); *Nance v. Ulferts*, 282 F.Supp.2d 912 (N.D.Ind. 2003); *Owen v. IC Systems Inc.*, 629 F.3d 1263, 1275 (11th Cir. 2011); *Duffy v. Landberg*, 133 F.3d 1120 (8th Cir. 1998); *Allan v. Asset Acceptance LLC*,

2011 U.S. Dist. LEXIS 88104 (S.D.Cal. Aug. 8, 2011); *Martinez v. CACH LLC*, 2011 U.S. Dist. LEXIS 68586 (S.D.Cal. June 27, 2011); *Jeske v. Persolve LLC*, 2011 U.S. Dist. LEXIS 53205 (S.D.Cal. May 18, 2011); *Sunga v. Rees Broome PC*, 2010 U.S. Dist. LEXIS 81970 (E.D.Va. Aug. 12, 2010). See also *Santoro v. Aargon Agency Inc.*, 252 F.R.D. 675 (D.Nev. 2008) (class certified on claim that seeking excessive interest violated FDCPA).

The claim that "the FDCPA does not convert a state court defense into a federal issue" is wrong. (Docket No. 57 at 10.) Violations occur "when [a collector] files suit to collect a debt for which it knows, or reasonably should know, the defendant is not liable." *Royal Fin. Group LLC v. George*, 2010 Mo.App. LEXIS 399, *8-*11 (Mo. Ct. App. Mar. 30, 2010) (collecting cases).

For example, filing or threatening suit on debts barred by applicable statutes of limitation is a FDCPA violation. *Kimber v. Federal Fin. Corp.*, 668 F.Supp. 1480 (M.D.Ala. 1987); *McCollough v. Johnson, Rodenburg & Lauinger LLC*, 637 F.3d 939, 944-949 (9th Cir. 2011); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011); *Goins v. JBC & Assocs. PC*, 352 F.Supp.2d 262 (D.Conn. 2005); *Schutz v. Arrow Fin. Servs. LLC*, 465 F.Supp.2d 872 (N.D.Ill. 2006); *Collecting Consumer Debts: The Challenges of Change: A Federal Trade Commission Workshop Report* (February 2009) (excerpts attached as Exhibit G) ("it... is a violation of the FDCPA to sue or threaten to sue consumers to recover on time-barred debt"). This prohibition applies whether or not the expiration of the limitations period completely extinguishes a debt, or merely prevents judicial enforcement. *Kimber*, 668 F.Supp. at 1486-1488.

Similarly, attempts to collect a debt that has been settled, or released, is a FDCPA violation – even though a "release," or an "accord and satisfaction," are "defenses." *Capital Credit & Coll'n Serv. Inc. v. Armani*, 206 P.3d 1114, 1120 (Ore. Ct. App. 2009); *McCammon v. Bibler Newman & Reynolds PA,* 493 F.Supp. 2d 1166, 1168-1169, 1172-1173 (D.Kan. 2007).

Plaintiff alleges here that Shindler brought a collection action on behalf of FR Investment, seeking the payment of $1,559.93 ***more than*** the amount actually owed on the alleged debt. Shindler's interpretation would render meaningless the bans on using a "false representation of the... amount" of a debt, or attempting to "collect any amount (including any interest...) unless

such amount is expressly... permitted by law," found in 15 U.S.C. §§1692e and 1692f.

## VI.    DEFENDANTS' OTHER ARGUMENTS ARE MERITLESS

Shindler suggests, wrongly, that a FDCPA claim based on an allegedly false or misleading statement cannot be pursued here, because a FDCPA claim only can rest on a statement that "[has] the ability to influence a consumer's decision." (Docket No. 54 at 5.) Increasing the claimed amount of a debt by over 60% *obviously* influences the debtor's thinking, and decision-making.

*O'Rourke v. Palisades Acquisition XVI LLC*, 635 F.3d 938, 939 (7th Cir. 2011), on which Shindler relies, holds that the FDCPA "regulates communications directed at the consumer [but] does not extend to communications that are allegedly meant to mislead the judge in a state court action."[6] Here, the complaint tells the debtor that $4,035.80 is owed when, in fact, $2,475.87 was owed. Plaintiff claims that this assertion is a false statement to the *debtor* who receives the collection complaint. *Donohue v. Quick Collect Inc.*, 592 F.3d 1027, 1031-1032 (9th Cir. 2010), noted that *Beler v. Blatt Hassenmiller Leibsker & Moore LLC*, 480 F.3d 470, 473-474 (7th Cir. 2007), which Shindler also relies upon (Docket No. 57 at 6, 10), did not decide whether a complaint is a communication under the FDCPA. *Donohue* held that "a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of [15 U.S.C.] §§1692e and 1692f." And *Ruth v. Triumph Partnerships*, 577 F.3d 790, 801 (7th Cir. 2009), held that statements that are misleading on their face, such as the one made by defendants, require no extrinisic evidence to prove that the statement is misleading. See *O'Rourke*, 635 F.3d at 944-946 (Tinder, J., concurring in the result) (discussing *Ruth*) and *Evory v. RJM Aquisitions Funding LLC*, 505 F.3d 769, 778 (7th Cir. 2007).

*Beler*, 480 F.3d at 473, did not deal with a situation where a debtor "[contended] that the [state-court collection] complaint was deceptive and that [a collector] set out to trick her into paying money she does not owe...." Here, there was a substantive falsehood alleged in a filing

---

[6] This decision is the subject of a pending petition for a writ of *certiorari.* No. 11-179 (Aug. 10, 2011).

against a consumer. This is precisely the sort of conduct that the FDCPA and the ICAA were designed to protect against. Thus, *Beler* provides no support to defendants. *Evory*, 505 F.3d at 778, held that, notwithstanding *Beler*, "a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a violation of [15 U.S.C. §§1692d and 1692e]." That is what happened here. Likewise, in *Washington v. North Star Capital Acquisition Inc.*, 2008 U.S. Dist. LEXIS 78256, *5 (N.D.Ill. Sept. 15, 2008), the consumer did not "allege the statements contained in North Star's state complaint are false," whereas plaintiff here makes such an allegation. The abuse of consumers comes not with the filing of a complaint, but with the filing of a complaint making a false or misleading claim; this violates the FDCPA. (See Docket No. 57 at 6.)

The pursuit of FDCPA claims for statutory damages, independent of any actual damages claim, is appropriate, Shindler's arguments notwithstanding. (Docket No. 57 at 10-11.) The provision of statutory damages allows for the award of relief where the damage is small, or hard to quantify. See *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) (statutory damages under the Fair Credit Reporting Act). *Quiroz v. Revenue Prod'n Mgmt. Inc.*, 252 F.R.D. 438, 444 (N.D.Ill. 2009), following *Murray*, held that statutory damages under the FDCPA can be pursued, even when actual damages are not alleged. More broadly, *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997), held that statutory damages are "a penalty that does not depend on proof that the recipient of the letter was misled.... All that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." (Citations omitted.)

The argument that the ICAA claims should be dismissed, for want of actual damages, is also wrong. (Docket No. 54 at 9.) Plaintiff had to appear and defend against the suit, and figure out what defendants did, taking time and resources. (Exhibit E.) Beyond that, any class members who actually paid defendants on a complaint based on an improper statement of the amount of the debt suffered actual damage as well. Furthermore, plaintiff is seeking, in addition to any actual damages he and class members may have incurred, nominal and punitive damages; this relief can

14

properly be awarded for violations of the ICAA.

Similarly, plaintiff's pursuit of declaratory relief is proper, contrary to defendants' arguments.  (Docket No. 54 at 9.)  Plaintiff is seeking "a declaration that defendants may not add interest to a debt for a period prior to the alleged ownership of the debt by [FR Investment] that had not been added by the holder of the debt at that time... [and] an injunction prohibiting defendants from demanding such interest or reporting such interest to credit bureaus."  (Docket No. 51 at 15.)  *Harris Trust & Savings Bank v. E-II Holdings Inc.*, 926 F.2d 636, 639-640 (7th Cir. 1991), held that a declaratory action can be brought where there is an actual controversy between the parties, which "must exist between the parties to the declaratory judgment action."  *Harris Trust* relied on *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937), which found a declaratory action could be brought on a "dispute between parties who face each other in an adversary proceeding."  The damages sought by plaintiff seek to compensate himself, and class members, for defendants' pursuit of improper interest.  The declaratory and injunctive relief would prevent *further* damage from occurring from the same foul; this, contrary to defendants' assertion, is a "useful purpose."  (Docket No. 54 at 9.)

**VII.    CONCLUSION**

Based on the preceding, the motions to dismiss should be denied.

Respectfully submitted,

/s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
Thomas E. Soule
EDELMAN COMBS LATTURNER & GOODWIN LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

15

## CERTIFICATE OF SERVICE

I, Thomas E. Soule, hereby certify that on November 16, 2011, I caused to be filed the foregoing document via the court's electronic filing system, which caused to be sent notification of such filing to the following parties via electronic mail:

David M. Schultz
dschultz@hinshawlaw.com

Jennifer W. Weller
jweller@hinshawlaw.com

Rachel H. Krayer
rhk@merlolaw.com

Thomas D. Donofrio
tdd@merlolaw.com

Thomas E. Sarikas
tes@merlolaw.com

Martin A. Kanofsky
mak@merlolaw.com

/s/ Thomas E. Soule
Thomas E. Soule

16