IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mark Terech, individually and on behalf of the classes defined herein, | ) ) ) |
| Plaintiff, | ) ) Case No.: 11-cv-4076 |
| v. | ) ) Judge: Leinenweber |
| First Resolution Management Corporation, First Resolution Investment Corporation, and Law Office of Keith S. Shindler, Ltd.,, | ) ) Magistrate Judge Brown ) ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

First Resolution Management Corporation and First Resolution Investment Corporation (collectively "First Resolution") by and through their attorneys David M. Schultz and Jennifer W. Weller, and for their Reply in Support of their Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure state as follows:

**INTRODUCTION**

Plaintiff does not dispute that in order to establish a waiver of an express contractual right there must be an intentional and unequivocal relinquishment of a known right. Plaintiff does not allege any intentional and unequivocal act by U.S. Bank or Unifund to establish that the right to accrue interest on Plaintiff's credit card debt was waived prior to First Resolution's purchase. Instead he concludes that U.S. Bank "waived" interest on his debt between the date the account was charged off (August 31, 2004) and the date that the account was sold to Unifund (January 25, 2005). (Am. Compl., ¶44). He claims this conclusion is supported by his allegations that

U.S. Bank did not send any billing statements[1] to plaintiff after it charged off the account, (Am. Compl., ¶41) and that the "face amount" of the debt at the time of the sale was the same as the charge off amount. (Am. Compl., ¶¶46). In support of these allegations Plaintiff references Exhibit D to the Amended Complaint which is allegedly a charge off statement from U.S. Bank. The charge off statement, however, states, "To reduce or avoid paying additional finance charges on your purchase balance, pay the total new balance of 983.88 by 9/20/04. Any cash balance or balance transfer *will continue to accrue daily interest until the date your payment is received*." (Ex. D). Far from establishing that U.S. Bank waived interest, this document states that interest will continue to accrue *after* the August 31, 2004 charge off date. Accordingly, Plaintiff's exhibit contradicts his claim that U.S. Bank "waived" interest at charge off. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999)("[A] Plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

Moreover, as Plaintiff acknowledges, First Resolution purchased the account from Unifund- not U.S. Bank- and there are no allegations as to whether Unifund charged interest after it purchased the account and sold it to First Resolution on July 25, 2007. (Am. Compl., ¶45).

Accordingly Plaintiff fails to establish (1) that U.S. Bank waived interest between charge off of the debt and sale to Unifund and (2) that interest could not be charged by Unifund after it

---

[1] Plaintiff cannot rely on the February 22, 2010 amendment, 12 C.F.R. §226.5(b)(2) to support the claim that U.S. Bank was required to send statements to accrue interest because the amendment was not effective until well after U.S. Bank sold the account. Under the prior version a statement need not be sent if it was deemed uncollectible. Even if U.S. Bank allegedly had the obligation to send a periodic statement in order to accrue interest after charge off, which Defendant denies, Plaintiff attached a U.S. Bank statement to his Amended Complaint which advises Plaintiff that interest will continue to accrue if the new balance is not paid off by 9/20/04.

purchased the debt and sold it to First Resolution. Accordingly the Amended Complaint must be dismissed.[2]

## ARGUMENT

Plaintiff claims that most banks waive interest on credit card debt because they do not want to increase the amount of bad debt on their books.[3] Plaintiff alludes to "banking rules" and makes broad generalizations of how "banks" classify defaulted debt. (Resp. at p.2). Plaintiff alleges, "[o]n information and belief, credit card issuers report the charge-off amount to credit reporting agencies." (Am. Compl., ¶32). Such broad allegations do not establish that U.S. Bank waived its contractual right to accrue interest on Plaintiff's account.

**A.  Plaintiff has not alleged a clear, unequivocal and decisive act by U.S. Bank to support the claim that it waived its right to accrue interest when it sold the account to Unifund.**

Plaintiff acknowledges that Unifund purchased his debt from U.S. Bank pursuant to an assignment. Under the law of assignment, "once assignors were authorized to charge interest, the common law kicked in and gave the assignees the same right, because the common law puts the assignee in the assignor's shoes, whatever the shoe size." *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005). Plaintiff acknowledges that "the rights an assignee receives are those which the assignor has at the time of assignment." (Resp. at p.4).

---

[2] It is unclear whether Plaintiff is challenging First Resolution's ability to accrue interest on the account after it purchased the debt on July 25, 2007. If Plaintiff is challenging such practice he has plead no facts to support such claim.

[3] Under Plaintiff's theory, a consumer who never makes a payment on a credit card account pays less interest than a consumer who makes minimum payments on his or her account. For example, if a consumer made monthly payments of 4% of the balance on a $5000 credit card account with an annual percentage rate of 18.9%, it would take the consumer 11 years and 5 months to pay off the debt. Under this example, by the time the debt is paid off, the consumer would have paid $8,109.16. In contrast, under Plaintiff's theory, a consumer who never made a payment on a $5000 balance with an 18.9% interest rate would only be charged interest for 180 days. Under the latter example, the consumer would owe $5491.

3

Plaintiff claims that although the contract expressly gave U.S. Bank and its assignees the right to accrue interest and although the charge off statement explicitly provides that "Any cash balance or balance transfer balance will continue to accrue daily interest until the date your payment is received," U.S. Bank "waived" its contractual right "for a number of prudential business reasons." (Resp. at p.2).

In *Olvera v. Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005), Plaintiff's counsel similarly argued that after a credit card account was charged off and sold, the assignee could not charge the interest rate provided under the contract. The Seventh Circuit rejected the claim that the Illinois Interest Act set a ceiling on the interest rate an assignee could charge, finding that the assignee could charge the contract rate. The court noted, "[i]t was the assignors who persuaded the plaintiffs to pay high interest rates; the plaintiffs could hardly have supposed that the rates would plummet if they defaulted!" *Id*. at 289.

Similarly Plaintiff has plead no basis for his claim that his interest rate went from 23.99% (the amount in the statement attached as Exhibit D) to zero upon U.S. Bank's charge off of the debt. Plaintiff could hardly have supposed that interest would cease to accrue upon default. Tellingly, there are no allegations in the Amended Complaint that U.S. Bank either represented to Terech or that Terech believed that U.S. Bank was not going to require compliance with the credit card agreement.

1.  **Plaintiff's citation to federal cases in other jurisdictions and cases outside of Illinois do not support Plaintiff's claim that U.S. Bank waived its right to accrue interest.**

Plaintiff cites cases outside of Illinois to allegedly support his theory that an assignee cannot exercise rights which were not exercised by the assignor. Plaintiff's Response misses the point because the law of assignment is not in dispute. Rather, Plaintiff fails to establish that U.S. Bank waived its right to accrue interest. Moreover, Plaintiff alleges nothing about Unifund.

4

Plaintiff cites *In re. 400 Walnut Associates, L.P.*, 2011 WL 5024289 (Bkrtcy. E.D.Pa. Oct. 20, 2011)(Resp. at pp.5-6). However, that case addressed the issue of whether an assignee could compound interest when the assignor's monthly statements over a 3 ½ year period showed that the assignor had never compounded interest. Terech does not claim that he received monthly statements in which U.S. Bank was not charging him interest.

Plaintiff cites *Beal Bank v. Crystal Props. Ltd. LP*, 268 F.3d 743, 747 (9th Cir. 2001) to support his claim that U.S. Bank waived its right to interest. (Resp. at p.6). *Beal Bank* did not analyze waiver. The debtor in *Beal Bank* owed seven unpaid notes. Each of the notes included the same language that the court interpreted to mean "the default interest rate [did] not become effective unless the holder of the note exercise[d] its option to accelerate." *Id*. at 748. Since Beal's predecessor did not exercise its right to accelerate in a clear and unequivocal manner, Beal could not apply the default interest rate prior to the date Beal filed its notices of default. The court stated, "[b]ecause, like the district court, we conclude that the plain language of the contract precluded the default interest rate from applying to the matured loans, we need not reach the issues of waiver and estoppel." *Id*. at 755. Accordingly, the court was concerned with whether a default interest rate was allowed under the contract language- not whether the creditor waived its right to interest.

*Padilla v. Ghuman*, 183 P.3d 653 (Colo. Ct. App. 2007) is also distinguishable. (Resp. at p.6). In *Padilla*, the court analyzed whether Plaintiffs, as assignees of five unpaid notes, were entitled to collect default interest retroactive to the original date of default. As in *Beal Bank*, the court interpreted the language of the notes which provided for an increase in the interest rate upon default. The court found that while the creditor had the option to raise the interest rate upon default under the language of the note, it was required to take affirmative action to

5

demonstrate such intention. Because the creditor did not exercise its option to increase the interest rate upon default, "interest continued to accrue at the standard interest rate under the notes rather than the default rate because the holder waived its right to exercise its option by failing to take affirmative action to indicate it was exercising the option to implement the default interest rate." *Id*. at 660. *Padilla* does not stand for the proposition that a right enforced by the creditor prior to default was waived after default. In fact, in *Padilla*, as in this case, the assignee could continue to accrue interest at the rate enforced by the creditor prior to default.[4]

2. **The amount that the debt was purchased for is not dispositive of Unifund and First Resolution's right to charge interest under the contract**.

Plaintiff claims that the "face value" of his debt was $2,475.87 and claims that Unifund and First Resolution only acquired the right to collect the "face value." (Resp. at p.8). Plaintiff's use of the term "face value" is odd and misleading. As is clear from the Bill of Sale between U.S. Bank and Unifund, U.S. Bank sold Unifund "Assets" identified in an Asset Schedule which included Plaintiff's debt. The Assets were expressly sold with "the right to collect all principal interest or other proceeds of any kind with respect to the Assets remaining due and owing as of the date hereof…" (Dkt 48-1). Thus, the debt was sold in a portfolio of other debts. The sale price of the portfolio (of which this was a minor part) was a matter of negotiation. That price was surely for an amount less than the full value of the debt; that is how the debt buying industry works - people don't pay their bills and creditors sell those bills for a discount. The fact that the

---

[4] Plaintiff cites to *American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 452 (6th Cir. 1942). (Resp. at pp.6-7). That case has nothing to do with waiver of interest or an assignee's rights under a credit card agreement. It involved Dirigold Metals Corp.'s attempt to enjoin American Dirigold Corp. from using an alleged secret process for manufacture of aluminum bronze and use of the trade name Dirigold.

sale price was for less than full value of any particular debt in a portfolio was not a waiver of the interest. It instead reflects what a willing buyer would pay for the debt in the marketplace.

Plaintiff's reference to "face value" in his discussion of debt is misleading because the term is ordinarily used to refer to insurance policies, tickets or stock certificates. *See* http://www.merriam-webster.com/dictionary/face%20value ("the value indicated on the face (as of a postage stamp or a stock certificate)"); Black's Law Dictionary (9th ed. 2009)(face amount defined as "1. par value. 2. Insurance. The amount payable under an insurance policy. — Also termed face value; face amount insured by the policy; face of policy. "). The allegation that the debt had a "face amount" of $2475.87 has nothing to do with whether U.S. Bank intentionally and unequivocally waived its express contractual right to accrue interest at the contract rate until the balance was paid.

Plaintiff speculates that "U.S. Bank gave up the right [to accrue interest] to avoid increasing the amount of bad debt on its books." (Resp. at p.8). Plaintiff is confusing bookkeeping principles with waiver. In fact U.S. Bank would have zeroed out the account when it was sold to Unifund. *See In re. 400 Walnut Associates, L.P.*, 2011 WL 5024289 (Bkrtcy. E.D.Pa. Oct. 20, 2011)(rejecting Plaintiff's claim that late charges were waived when bank made a bookkeeping entry zeroing out the late charges in connection with sale of the loan). Plaintiff's allegations as to why a bank might be motivated to waive interest are wholly speculative and are not allegations demonstrating a purposeful waiver by U.S. Bank with respect to Terech's account. *See F.D.I.C., ex rel. Ravenswood Bank v. Republic Title Co.*, 2011 WL 1526817 (N.D.Ill. 2011)("The implied waiver of a legal right must be proved by 'a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver'").

7

**B.    Plaintiff has not alleged any facts regarding Unifund's collection efforts on the account between January 25, 2005 to July 25, 2007.**

While Plaintiff alleges that U.S. Bank "waived" its right to accrue interest, Plaintiff says nothing about Unifund. Plaintiff argues, "[w]hile defendants could prospectively resume the addition of interest after proper notice to the consumer, no such notice was given." (Resp. at p.7). Plaintiff, however, does not plead anything at all about what Unifund did or did not do in his Amended Complaint. Plaintiff simply claims that Unifund allegedly purchased the debt from U.S. Bank on January 25, 2005 and that First Resolution purchased the debt from Unifund on July 25, 2007. (Am. Compl., ¶¶42,45). Under Plaintiff's theory if Unifund gave Terech notice that it would charge him interest, Unifund could prospectively resume the addition of interest after it purchased the account from U.S. Bank on January 25, 2005. Plaintiff says nothing about what Unifund did after acquisition of the debt. First Resolution acquired Unifund's rights when it purchased the account. Since there are no facts plead to support the claim that Unifund was not entitled to charge interest after January 25, 2005, there are no facts plead to support the claim that First Resolution could not impose interest on the account after January 25, 2005.

**C.    Plaintiff has not plead that he incurred actual damages as a result of Defendants' conduct in seeking alleged unauthorized interest.**

Plaintiff alleges that First Resolution violated the Illinois Collection Agency Act, 225 ILCS 425/9, ("ICAA"), "by adding unauthorized interest to debts." (Am. Compl., ¶71). He concludes, "Plaintiff was damaged as a result." (Am. Compl., ¶72). In his Response, Plaintiff claims that his Amended Complaint adequately pleads actual damages and argues that he "had to appear and defend against the suit, and figure out what defendants did, taking time and resources." (Resp. at p.14). This argument, however, does not establish how allegedly seeking more interest than Defendants were entitled to caused him actual damage as required by the

ICAA when he *never paid anything* on the debt. Actual injury is an element of a cause of action under the Illinois Collection Agency Act. *Trull v. GC Services Ltd. Partnership*, 961 F.Supp. 1199, 1207 (N.D.Ill.,1997).

Terech claims that he is seeking "nominal" and "punitive" damages under the ICAA. (Resp. at p.14). The fact that he is claiming nominal and punitive damages has nothing to do with whether he has plead "actual" damages. Punitive damages cannot be recovered in place of actual damages. Punitive damages are in addition to compensatory damages and cannot be allowed unless actual damage is shown. *In re Application of Busse,* 124 Ill.App.3d 433, 438, 79 Ill.Dec. 747, 464 N.E.2d 651 (1984). Plaintiff's failure to link the claim that First Resolution attempted to collect post charge off interest to which it was allegedly not entitled to any "actual damage" incurred by him requires dismissal of his ICAA claim.

### D. Plaintiff is not entitled to declaratory relief.

Plaintiff claims that he is entitled to declaratory relief because there is a controversy between the parties. (Resp. at p.15). Yet the fact that the parties are adverse in a lawsuit does not establish the necessity for declaratory relief. In *Hickman v. Wells Fargo Bank N.A.*, 683 F.Supp.2d 779, 789 (N.D.Ill.,2010) Plaintiff sought a declaration that Defendant violated Regulation Z and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*, ("TILA"). Defendant argued that declaratory relief was inappropriate because it did not add anything to Plaintiff's claims for monetary damages. The court stated:

> While there is no express prohibition against declaratory relief contained in TILA, the statute contains a comprehensive damages scheme, including actual damages, statutory damages and attorneys' fees and costs. Moreover, Plaintiff has not established in any of his three claims for declaratory relief that the remedies contained in TILA would be ineffective or inappropriate. Indeed, in his opposition, Plaintiff fails to offer any explanation for why TILA's statutory remedies are insufficient. District courts have discretion to deny declaratory relief when a more complete remedy is available. Accordingly, because TILA presents

9

comprehensive remedies to Plaintiff and the class, the Court dismisses Count I of Plaintiff's Complaint without prejudice. *Id.* at 790. (citations omitted).

Similarly, the FDCPA provides for recovery of actual damages, statutory damages and attorneys fees and costs. 15 U.S.C.§1692k(a). Plaintiff fails to demonstrate that monetary damages would be ineffective or inappropriate. Accordingly, Plaintiff's claim for declaratory relief should be dismissed.

WHEREFORE, Defendant First Resolution Management Corporation and First Resolution Investment Corporation LLP respectfully request that the Court grant their Motion to Dismiss Plaintiff's Amended Complaint with prejudice, and award them such other and further relief as this Court deems proper.

Respectfully submitted,

David M. Schultz
dschultz@hinshawlaw.com
Jennifer W. Weller
jweller@hinshawlaw.com
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
phone:312-704-3000
fax: 312-704-3001

By: s/*Jennifer W. Weller*
   One of the attorneys for Defendants
   First Resolution Management Corp. and
   First Resolution Investment Corp.

130218415  0926124