IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARK TERECH,** | |
| **Plaintiff,** | |
| v. | Case No 11 C 4076 |
| **FIRST RESOLUTION MANAGEMENT CORPORATION, FIRST RESOLUTION INVESTMENT CORPORATION, and the LAW OFFICE OF KEITH S. SHINDLER, LTD.,** | Hon. Harry D. Leinenweber |
| **Defendants.** | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss Plaintiff's Corrected First Amended Complaint. For the reasons stated herein, the Court grants both Motions to Dismiss in part and denies them in part.

### I. BACKGROUND

At the Motion to Dismiss stage, the Court accepts Plaintiff's well-pleaded factual allegations as true. Before 2004, Plaintiff Mark Terech had a credit card account with U.S. Bank. After he became delinquent in his payments, the account was charged off (removed from U.S. Bank's books) on August 31, 2004. At charge-off, U.S. Bank reversed a number of accrued fees, including some late fees and interest, reducing the charge-off amount to $2,475.87. U.S. Bank sent Plaintiff no additional account statements after the account was charged off.

U.S. Bank sold the debt to Unifund CCR Partners ("Unifund") on January 25, 2005, listing the value of the debt as $2,475.87. The Bill of Sale attached to the Complaint, which purportedly governs that sale, states that U.S. Bank assigned (as-is) its:

> rights, title and interest in and to each of the assets identified in the Asset Schedule [not provided] . . . together with the right to collect all principal, interest or other proceeds of any kind with respect to the Assets remaining due and owing as of the date hereof . . . from and after the date of this Bill of Sale and Assignment of Assets.

Compl. Ex. C.

Defendant First Resolution Investment Corporation (with Defendant First Resolution Management Corporation, "First Resolution") allegedly purchased the debt on July 25, 2007, at which time the debt amount was still listed as $2,475.87. (The purchase price was significantly lower, reflecting the risk of non-collection. References to "face value" are accordingly understood to describe the amount of the delinquent debt as listed in the schedule of assets in each sale.) First Resolution adjusted the amount owed by adding interest at a rate of 15.65%, dating back to the 2004 charge-off date, well before it owned the debt.

On March 11, 2009, the Law Office of Keith S. Shindler, Ltd. ("Shindler") filed a collection action on First Resolution's behalf in the Circuit Court of Cook County, seeking $4,385.80 (which included the principal, calculated interest, and $350.00 in legal fees). Plaintiff was served on or around September 29, 2010. It

appears to be undisputed that the lawsuit was barred by the statute of limitations; it was nonsuited in April 2011.

Plaintiff brings several claims on behalf of himself and putative classes of similarly situated consumers. Count I alleges that the retroactive addition of interest violated the federal Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. § 1692 *et seq.*). Count II is a similar claim under the Illinois Collection Agency Act ("ICAA," 225 Ill. Comp. Stat. 425/1 *et seq.*). Count III seeks declaratory and equitable relief on the same theory. Finally, Count IV is an individual ICAA claim, based on First Resolution's time-barred lawsuit. Only Count I is brought against all defendants; the remainder are against First Resolution alone. Defendants now seek to dismiss all counts. The parties focus on Plaintiff's individual claims at this stage, and this Court accordingly defers questions regarding the viability of the proposed classes.

## II. <u>LEGAL STANDARD</u>

On a Motion to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in Plaintiff's Complaint and draws all inferences in his favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiffs need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause

of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Naked assertion[s] devoid of further factual enhancement" will not suffice – a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

The FDCPA governs when and how debt collectors (those who buy delinquent debts) may endeavor to collect from indebted consumers. *See* 15 U.S.C. § 1692a. The statute broadly prohibits unfair or deceptive conduct in debt collections. For example, debt collectors may not use harassing or abusive conduct, 15 U.S.C. § 1692d, or unfair or unconscionable means, 15 U.S.C. § 1692f, to collect a debt. Unconscionable means include collecting any amount not authorized by law or the original debt agreement. The Act also prohibits false, deceptive, or misleading representations in connection with collecting a debt, including misrepresentations about "the character, amount, or legal status of any debt," threats to take any unlawful action, or empty threats. 15 U.S.C. § 1692e. Under the statute, a "communication" to consumers is broadly defined to include "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

A debt collector who fails to comply with the FDCPA with regard to a consumer is liable to that consumer for the sum of: (1) any actual damages; (2) statutory damages up to $1000 (or up to

$500,000 or 1% of the debt collector's net worth in a class action); and (3) attorneys' fees and costs.  15 U.S.C. § 1692k.

### III.  DISCUSSION

Both Defendants have moved to dismiss the Complaint, strenuously arguing that Plaintiff has alleged no unlawful conduct because First Resolution was entitled to collect interest dating back to 2004.  Because both Motions largely hinge on whether Plaintiff has adequately alleged that U.S. Bank and Unifund waived their rights to collect interest, the Court turns first to that question.

#### A.  Retroactive Addition of Interest

Unifund and then First Resolution undisputedly stepped into the shoes of their respective assignors when they purchased Mr. Terech's debt, taking that debt subject to any existing waivers or defenses.  *See Olvera v. Blitt & Gaines, P.C.,* 431 F.3d 285, 288 (7th Cir. 2005); *Community Bank of Greater Peoria v. Carter,* 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1996).  Under Illinois law, waiver is the intentional relinquishment of a known right, and can be implied if the party seeking to prove waiver shows that the waiving party took a "clear, unequivocal, and decisive act . . . manifesting an intention to waive its rights."  *Pielet v. Hiffman*, 948 N.E.2d 87, 96 (Ill. App. Ct. 2011).

Plaintiff argues that First Resolution unlawfully sought to collect interest that U.S. Bank and Unifund had knowingly waived, which was both deceptive (§ 1692e) and unfair (§ 1692f).

Accordingly, Plaintiff's allegations are based on the FDCPA's standards and do not, as Defendants argue, seek impermissibly to convert a state-court defense into a federal claim. *Cf. Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473-74 (7th Cir. 2007)(Plaintiff sought to enforce other statutes through the FDCPA); *Washington v. North Star Capital Acquisition, LLC, No. 08 C 2823,* 2008 WL 4280139, at * 2 (N.D. Ill. Sept. 15, 2008)(no FDCPA violation for failing to meet state court procedural requirements).

Contrary to Plaintiff's assertions, however, merely pleading that "U.S. Bank waived" is, at this stage, essentially a legal conclusion that this Court need not accept. Accordingly, the critical question is whether Plaintiff has alleged sufficient facts, taken as true, to show that U.S. Bank and Unifund waived interest that otherwise would have accrued after charge-off, such that First Resolution likewise cannot collect that interest. Plaintiff presses two facts relating to waiver: (1) that the "face value" of the debt each time it was sold was the same as the amount at charge-off, and therefore that no interest had been added to it; and (2) that U.S. Bank sent Plaintiff no periodic statements after charge-off, which it should have done if interest was accruing.

Defendants object that Plaintiff's claims are insufficient to prove waiver, and that the right to collect interest was specifically preserved in the Bill of Sale. As set forth above, however, the Bill of Sale only assigns the right to collect amounts

- 6 -

"due and owing" arguably either at or after the transfer. Construing the facts and circumstances most favorably to Plaintiff, that assignment did not preserve the right to collect any interest waived by U.S. Bank, as such interest would not have been "due and owing." The Court therefore considers whether Plaintiff has adequately alleged waiver under Rule 8.

### *1. Face Value of Loan*

Plaintiff alleges that the face value of the debt remained the same from the date of charge-off until First Resolution acquired it, which necessarily means that neither U.S. Bank nor Unifund added interest to the amount due. (First Resolution's argument that U.S. Bank would have zeroed out any interest on its accounting books when U.S. Bank sold the debt is irrelevant — the question is whether it added the interest in the first place, not how its accountants handled the sale.) Plaintiff offers detailed allegations about what banks commonly do — waiving interest on charged-off accounts to minimize the amount of "bad debt" on their books — but does specifically allege that U.S. Bank has such a policy. Therefore, those allegations, taken as true, establish (at most) U.S. Bank's incentive to waive interest, and not its actual practice. All together, Plaintiff's allegations may not be sufficient to carry the day at trial, as they say nothing about the prior holders' actual policies. However, the allegations are sufficient to create more than "a sheer possibility" that any interest was waived. *Iqbal*, 129 S. Ct. at 1949.

Defendants argue that the statement which U.S. Bank sent to Plaintiff when it charged off his account defeats any claim of waiver, because it specifies that interest will continue to accrue. Compl. Ex. D.  However, drawing all inferences in Plaintiff's favor, such boilerplate only indicates that the waiver, if it occurred, was knowing – that U.S. Bank knew that it could still collect interest, but chose not to.

### *2. Absence of Periodic Statements*

Plaintiff alleges that U.S. Bank did not send him any periodic statements after charging off his account.  This is significant, he argues, because in 2004 the Truth In Lending Act (the "TILA") regulations required the bank to send him a billing statement until it deemed the account "uncollectible," at which point it would no longer be adding interest to the balance; the lack of statements thus would indicate an absence of new interest charges.  (The duty to send periodic statements did not extend to subsequent debt purchasers like Unifund. *Neff v. Capital Acquisitions & Management Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003).)

In 2004 and 2005, TILA's Regulation Z required credit card creditors to send periodic statements to account holders for any billing cycle in which the account had a balance of more than one dollar or in which the creditor added a finance charge (such as interest).  12 C.F.R. § 226.5(b)(2)(i)(2005); 12 C.F.R. Pt. 226, Supp. I (2004); 12 C.F.R. § 226.4(b)(defining "finance charge" to include interest).  At that time, a creditor did not have to send

statements if: (1) if sending one would have violated federal law; (2) delinquency collection proceedings had been instituted; or (3) it had deemed the account uncollectible. *See* 12 C.F.R. § 226.5(b)(2)(i)(2005). All parties assume that U.S. Bank stopped sending Plaintiff statements under the "uncollectibility" prong. Effective July 1, 2010, the regulation was clarified to explain that a creditor has deemed an account "uncollectible" when it stops trying to collect on it. 74 Fed. Reg. 5244, 5276 (January 29, 2009). Where a regulation has been merely clarified after the events at issue in a case, a court may apply the regulation as clarified. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 979 (7th Cir. 2004).

While earlier cases equated charge-off and uncollectibility, the clarification rejects that result and the cases adopting it, like *Van Slyke v. Capital One Bank*, 2007 WL 2385108, at *6 (N.D. Cal. 2007), are no longer persuasive. *Van Slyke* relied on the Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903, 36904 n. 1 (June 12, 2000), which connects charge-off to a credit classification of "loss" — when an asset is considered uncollectible or of insufficient salvage value to warrant keeping it on the books. *Id.* at n.1. The Policy also noted, however, that banks need not adopt an identical classification system. *Id.* Section 226.5, by contrast, has always focused on what the *creditor* actually deems uncollectible. Finally, if charge-off and uncollectibility were identical, the

2010 amendment to § 226.5 (which allows creditors to stop sending periodic statements if an account has been charged off and no interest has been added) would have been entirely superfluous.

Accordingly, the 2004 regulation did not permit a creditor to automatically stop sending statements after charge-off. Still, it is difficult to see what the discontinued statements add to Plaintiff's waiver argument. Plaintiff argues that the determination of uncollectibility is important because adding interest to the account would have indicated that U.S. Bank deemed the account collectible, pointing to an IRS regulation relating to disclosure of discharge of indebtedness income. 26 C.F.R. § 1.6050P-1. However, Plaintiff has identified no authority for construing § 226.5 by reference to § 1.6050P-1, and this Court has found none. *Cf. Murray v. Citibank (S.D.), N.A.*, No. 04 C 3294, 2004 WL 2367742, 2 (N.D. Ill. Oct. 19, 2004)(account became uncollectible in 1991, but was not "charged off to the IRS" until 1992); *Kelly v. Wolpoff & Abramson, LLP,* 634 F.Supp.2d 1202, 1210 (D. Colorado 2008)(noting that charging off a debt is not equivalent to a discharge under the income tax regulations). Thus, periodic statements (or lack thereof) add nothing to the inquiry into whether U.S. Bank applied interest to Plaintiff's account after August 2004. However, as the Court noted above, Plaintiff's allegations regarding waiver were already sufficient to survive a motion to dismiss.

**B.   § 1692e**

Having concluded that Plaintiff has adequately alleged waiver in support of his FDCPA claim, the Court turns to Shindler's additional challenges to Count I.  Most of Shindler's objections are necessarily dispensed with under the analysis above, or amount to attacks on the merits, and need not detain us long.  There are, however, two arguments relating to § 1962e buried in his brief that merit further consideration.  The first is that the statements in the state court complaint were immaterial and therefore not misleading, because however much interest was claimed on a genuine debt would not affect a consumer's behavior; the second is that a state court complaint does not amount to a false representation within the meaning of the statute.

First, the Court disagrees that the alleged misrepresentation is immaterial.  The Seventh Circuit explained the materiality requirement in *Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009).  There, it rejected as immaterial the allegedly misleading practice of listing both the principal and interest due in one line, rather than listing them separately.  The court stressed that "a dollar due is a dollar due," and that combining principal and interest onto one line harmed no one, unlike, for example, applying the wrong interest rate could.  *Id*. at 757.  The allegedly false representation here — that First Resolution was entitled to collect the interest dating back to 2004 when it was not — is closer to the hypothetical application of the incorrect

interest rate that it is to the challenged practice in *Hahn*. Simply put, it substantially changes the amount allegedly due. Accordingly, the Court finds that the allegedly misleading statements were material.

The Court likewise disagrees that the state court complaint cannot amount to a false representation of the character, amount, or legal status of Plaintiff's debt. The Seventh Circuit has declined to rule on whether complaints filed in state court, in the sense that they communicate with the consumer, can violate the FDCPA. *See O'Rourke v. Palisades Acquisition XVI, LLC.*, 635 F.3d 938, 941 n.1 (7th Cir. 2011). Although the Seventh Circuit has expressed skepticism of such claims, *see Beler,* 480 F.3d at 473, courts in this District have nonetheless repeatedly held that where, as here, the allegations appear to fit precisely into the FDCPA's prohibition against misrepresenting "the character, amount, or legal status of any debt," such state court complaints are covered by the statute. *See Berg v. Blatt, Hasenmiller, Leibsker & Moore*, No. 07 C 4887, 2009 WL 901011, at *5-6 (N.D. Ill. March 31, 2009)(collecting cases). Accordingly, the Court finds that the allegation that Defendants misrepresented their legal entitlement to collect waived interest, which would necessarily then misrepresent the amount of debt, states a claim under § 1692e.

### C. § 1692f

Shindler also argues that Plaintiff has not shown an unfair or unconscionable means of collecting that under § 1692f. He first

argues that the mere filing of a lawsuit is not oppressing or harassing. However, his argument and the cases he cites interpret § 1692d, not § 1692f, and are therefore inapposite.

Next, Shindler argues that there is no evidence that he knew of any waiver. Several provisions of the FDCPA predicate liability on knowing violations, see § 1692c(a)(2), but § 1692f does not appear to be among them. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Section 1692k(c) creates an affirmative defense to civil liability if a debt collector shows that the FDCPA violation was a *bona fide* error that escaped the collector's reasonable procedures. Nothing in Rule 8, however, requires Plaintiff to anticipate such an affirmative defense and overcome it in his complaint.

Finally, Shindler argues that because the credit card agreement provided for interest charges, Plaintiff cannot show any attempted "collection of any amount (including any interest[)]" not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1). The Court agrees that § 1692f(1) appears to be directed at debt collectors who charge fees not contemplated *by the original agreement*, not debt collectors who seek to charge fees contemplated by the agreement but arguably waived thereafter. *See Transamerica Financial SVS, Inc. v. Skyes,* No. 97 C 2568, 1998 WL 325231, at *3 (N.D. Ill. June 10, 1998). Accordingly, Plaintiff has not stated a claim

specifically under § 1692f(1), but has stated one under the more general provision of § 1692f.

### D. Damage Claims under the ICAA and FDCPA

Defendants challenge whether Plaintiff adequately pled damages under either the ICAA or the FDCPA, because, although he appeared to defend the suit, it was dismissed without his having to pay the debt or any interest. Shindler argues that under the FDCPA, a plaintiff must show actual damages before statutory damages may be awarded. This is incorrect. *See Anderson v. Credit Bureau Collection Servs., Inc.,* 422 Fed.Appx. 534, 536 (7th Cir. 2011) (aggrieved consumers may recover actual *or* statutory damages).

First Resolution makes a stronger argument under the ICAA. Reviewing courts in Illinois appear not to have addressed whether actual damages are required under the ICAA; however, several district courts have found that they are. *See Grant-Hall v. Cavalry Portfolio Services, LLC*, --- F.Supp.2d ---, 2012 WL 619651, at *8 (N.D. Ill. 2012). Although some of those decisions found that attorney's fees cannot qualify as actual damages, having to pay an appearance fee has been deemed to constitute sufficient damage. *See id.* (citing 705 Ill. Comp. Stat. 105/27.2(e) and 705 Ill. Comp. Stat. 105/27.2a(e)). Accordingly, in alleging that he "disputed the debt and defended the state court lawsuit," Compl. at ¶ 51, Plaintiff alleged actual damages.

First Resolution further argues, however, that Plaintiff's having to appear and defend the case is not an injury specific to

- 14 -

the harm alleged here — the allegedly unlawful addition of retroactive interest. (Plaintiff did not respond to this argument in his surreply.) There is a certain perversity in the argument that Plaintiff suffered no damage by the allegedly unlawful addition of interest, because he already had to appear to contest the suit as time-barred. That issue aside, however, the Complaint does not adequately allege an injury specific to the purportedly unlawful addition of interest under Count II. Accordingly, the Court dismisses Count II without prejudice.

### E.  Availability of Declaratory Relief

First Resolution argues that Plaintiff is not entitled to declaratory relief in Count III, noting that it is within this Court's discretion to deny declaratory relief where the governing statute offers more complete remedies. In attacking the necessity and relevance of declaratory relief, however, First Resolution largely ignores Plaintiff's additional request for injunctive relief. Without citing to a statute, Plaintiff asks this Court to declare First resolution's actions "unlawful." It is unclear by what metric Plaintiff would have the conduct evaluated, except the FDCPA and ICAA. Injunctive relief is not available to private litigants under the FDCPA. *Zanni v. Lippold*, 119 F.R.D. 32, 34 (C.D. Ill. 1988). Neither party has addressed whether injunctive relief is available under the ICAA, but this Court has already dismissed the ICAA claim. Accordingly, in light of the comprehensive damages scheme under the FDCPA and the unavailability

of civil injunctions under that statute, this Court dismisses Count III without prejudice.

### F. Statute of Limitations

On December 16, 2011 the Court sought supplemental briefing from the parties as to whether this action was time-barred under the FDCPA's one-year statute of limitations, given that the state-court suit was filed in 2009. *See* 15 U.S.C. § 1692k(d)(FDCPA claims must be brought within one year of the violation). There is no dispute that the lawsuit was filed in 2009, but was not served upon Plaintiff until September 2010. Compl. Ex. A.

There is a split of authority over whether the filing of a debt collection lawsuit or its service on the consumer starts the clock for FDCPA purposes. *Compare Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997)(concluding that time begins to run on the date that the lawsuit is filed) with *Johnson v. Riddle,* 305 F.3d 1107, 1113 (10th Cir. 2002)(statute begins to run upon service). *See also, Judy v. Blatt, Hasenmiller, Leibsker and Moore LLC,* No. 09 C 1226, 2010 WL 431484, at *3 n.1 (N.D. Ill. Jan. 29, 2010)(noting the split). The Court concludes that, as between the date of filing in the date of service, the clock ran in this case from the date of service. (Whether the statute of limitations did not begin to run until then, or the limitations period was equitably tolled until Plaintiff was served, *see Kubiski v. Unifund CCR Partners,* No. 08 C 6421, 2009 WL 774450, at * 2 (N.D. Ill. Mar. 25, 2009) the result is the same.) However, the Court's conclusion that the

substantial gap between filing and service did not render this lawsuit untimely does not mean that Defendants may not re-raise the limitations issue at a later date if they obtain evidence that Plaintiff had earlier notice of the allegedly unlawful interest charges.

### IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Denies the Motions to Dismiss Count I as to all but the claim under § 1692f(1);

2. Grants the Motions to Dismiss Count II without prejudice; and

3. Grants the Motions to Dismiss Count III without prejudice.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

**DATE:** 4/12/2012